FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2000 MAY -4  AM 10: 02

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and NORTHERN INSURANCE COMPANY OF NEW YORK, ) ) ) ) | |
| Plaintiffs, ) | Civil Action No. 5:00-CV-149-OC-10 |
| ) | |
| vs. ) | |
| ) | |
| CUTRALE CITRUS JUICES USA, INC., ) ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiffs Zurich American Insurance Company ("Zurich"), as successor in interest to Zurich Insurance Company, U. S. Branch, and Northern Insurance Company of New York ("Northern"), through their undersigned counsel, for their Complaint allege as follows:

### I.   INTRODUCTION

1.    Plaintiffs are insurers seeking a determination from this Court regarding their respective rights and obligations under certain insurance policies issued to Cutrale Citrus Juices USA, Inc. ("Cutrale"), a juice manufacturer.  The insurance policies at issue are (a) general liability and property coverage package policies ("Package Policies") issued by the Plaintiffs to Cutrale, covering the periods October 1997 to October 1998 and October 1998 to October 1999, respectively; (b) an Umbrella Policy incepting in October 1998, providing general liability coverage in excess of the limits of the 1998-99 Package Policies; and (c) a Boiler and Machinery Policy between Zurich and Cutrale covering the policy period October 1997 to October 1998.

Exhibits filed separately

2.      An actual dispute has arisen between Plaintiffs and Cutrale concerning coverage under the first-party property coverages of the 1997-98 Package Policy and Boiler and Machinery Policy for an incident in May 1998 in which propylene glycol leaked into orange juice during Cutrale's manufacturing process.  Propylene glycol is a commonly-used refrigerant and food additive.  Shortly after detecting the leak, Cutrale destroyed a quantity of recently-produced orange juice and allegedly incurred certain other expenses related to the incident.  The foregoing events are hereinafter described as "the 1998 Incident."  Cutrale did not notify Zurich or Northern of the 1998 Incident until August, 1999.

3.      Cutrale manufactures orange juice for, among others, Tropicana Products, Inc. ("Tropicana").  Many months after the 1998 Incident, Tropicana transported approximately 250,000 gallons of orange juice from the Cutrale facility to Tropicana's facility.  Tropicana blended the Cutrale juice with approximately 2,250,000 gallons of orange juice it had otherwise obtained.  In July, 1999, Tropicana allegedly detected trace amounts of propylene glycol in the blended juice.  The foregoing events are hereafter described as the "1999 Incident."

4.      Propylene glycol is generally recognized as safe by the U.S. Food and Drug Administration ("FDA").

5.      Tropicana has alleged that the 250,000 gallons of Cutrale-supplied juice produced by Cutrale at around the time of the 1998 Incident was the source of the propylene glycol detected in its blended juice in July, 1999.

6.      Cutrale subsequently submitted to the Plaintiffs claims under policies issued by the Plaintiffs for amounts it may become obligated to pay to Tropicana as a result of the 1999 Incident <u>and</u> for damage to its own property allegedly caused by the 1998 Incident.

7.     A real, live controversy exists regarding, among other things, which of the insurance policies at issue – if any – affords coverage for the 1998 and 1999 Incidents.  Zurich seeks a declaration that coverage for the 1998 Incident under the property coverage section of the 1997-98 Package Policy and under the Boiler and Machinery Policy is barred because of Cutrale's failure to provide timely notice of the 1998 Incident and for other reasons.  Zurich further seeks a declaration of its obligations arising out of the 1999 Incident under the general liability coverage sections of its 1998-99 Package Policy and its 1998-99 Umbrella Policy.

8.     This action seeks a declaratory judgment, pursuant to Title 28, United States Code §§ 2201 and 2202 to determine the following:

(a)     whether and to what extent coverage exists for the 1999 Incident under the general liability coverage part of the Package Policy between Northern and Cutrale, policy number CMM86494748, having policy period October 4, 1998 to October 4, 1999 ("1998-99 Package Policy") and the umbrella policy between Northern and Cutrale, policy number UBA 33905564, having a policy period October 4, 1998 to October 4, 1999 ("Umbrella Policy");

(b)     whether and to what extent coverage exists for the 1998 Incident under the property coverage section of the Package Policy between Zurich and Cutrale, policy number CPO 910-98-92-01, having a policy period October 4, 1997 to October 4, 1998 ("1997-98 Package Policy") and the Boiler and Machinery Policy between Zurich and Cutrale, policy number BM 83-42-803-01, having a policy period October 4, 1997 to October 4, 1998 ("Zurich BM Policy"); and

(c)     the respective rights and duties of the Plaintiffs and Cutrale arising under the aforementioned policies as a result of the 1998 and 1999 Incidents.

## II.   JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to Title 28, United States Code § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.   The underlying facts establishing jurisdiction are set forth more fully below.

10.    Venue is proper in this Court pursuant to Title 28, United States Code § 1391(a) and (c).  The underlying facts establishing venue are also set forth more fully below.

## III.   PARTIES

11.    Zurich is a New York corporation engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 28th Floor, New York, New York 10006, and a main administrative office or principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.  Zurich is authorized to transact business and has transacted business in Florida.

12.    Northern is a New York corporation engaged in the insurance business with a statutory home office located at One Battery Park Plaza, New York, NY 10004 and a main administrative office or principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.  It is authorized to transact business and has transacted business in Florida.

13.    Cutrale is a corporation organized under the laws of Florida with its principal places of business located at 11 Cloud Street, Leesburg, FL 34748-5306 and 602 McKean Street, Auburndale, FL 33823-4070.   Cutrale is authorized to transact business and has transacted business in Florida.  Cutrale is engaged in the business of manufacturing and selling fruit and vegetable juice.

4

)                                    )

## IV.   <u>THE COVERAGE DISPUTE</u>

14.   Upon information and belief, Cutrale entered into an agreement with Tropicana, to provide Tropicana orange juice of a certain type and quality (the "Cutrale-Tropicana Agreement").

15.   Pursuant to the Cutrale-Tropicana Agreement, Cutrale manufactured and processed orange juice and stored the juice at its Leesburg, Florida facility for pick up by Tropicana (the "Cutrale orange juice").

16.   Upon information and belief, in or about July, 1998, it was discovered that a refrigerant line in Cutrale's Leesburg facility was leaking, which allowed propylene glycol, a common food additive as well as coolant used in food storage and processing, to mix with orange juice during the manufacturing process.

17.   Upon information and belief, after discovering propylene glycol in certain juice, Cutrale destroyed all juice that Cutrale believed had been or might potentially have been impacted by the leak as well as some earlier production.

18.   Many months after the 1998 Incident, Tropicana took possession of orange juice from Cutrale's Leesburg facility and transported it to its own facility.

19.   Upon information and belief at some time during the first six months of 1999, Tropicana added the Cutrale orange juice to approximately 2.25 million gallons of orange juice that it received from sources other than Cutrale.  (The product resulting from the admixture of the Cutrale orange juice with this larger batch of orange juice from sources other than Cutrale is hereinafter referred to as the "blended Tropicana orange juice.")

20.   Upon information and belief, Tropicana later packaged a certain quantity of the blended Tropicana orange juice.

5

21.     Thereafter, in July, 1999, Tropicana allegedly discovered trace amounts of propylene glycol in certain packages or other containers containing the blended Tropicana orange juice.

22.     Upon information and belief, Tropicana has alleged that the source of the propylene glycol was Cutrale's orange juice that was manufactured in mid-1998 and so informed Cutrale.

23.     Upon information and belief, Tropicana refused to sell or otherwise use the blended Tropicana orange juice.

24.     Upon information and belief, Tropicana destroyed a certain quantity of orange juice and packaging.

25.     Upon information and belief, the remaining batch of the blended Tropicana orange juice stored at Tropicana's Florida facility was "reworked," and Tropicana consigned some or all of it to Cutrale for sale.

26.     Upon information and belief, Cutrale sold for Tropicana's account some or all of the reworked, blended Tropicana orange juice for an amount of approximately $2.4 million.

27.     Upon information and belief, Tropicana has made demand on Cutrale for immediate reimbursement of approximately $6.8 million in expenses allegedly incurred as a result of the 1999 Incident. Upon information and belief, Tropicana has not filed suit against Cutrale regarding the 1999 Incident.

28.     On or about August 16, 1999, Cutrale first notified Zurich and Northern about the 1998 and 1999 Incidents.

6

29.     Cutrale has made a demand for coverage under the insurance policies issued by the Plaintiffs for the amount it may become obligated to pay to Tropicana as a result of the 1999 Incident.

30.     Cutrale has also made a claim for coverage under the insurance policies issued by Plaintiffs for injury to its own property as a result of the 1998 Incident.

31.     On or about March 23, 2000, Cutrale wrote to Zurich and Northern requesting, among other things, an immediate determination by Zurich and Northern regarding coverage for the 1999 Incident under its policies.

32.     An actual controversy exists between Plaintiffs and Cutrale respecting insurance coverage arising from the 1998 and 1999 Incidents.

## V.     THE INSURANCE CONTRACTS

### 1.     GL Coverage Section of the 1998-99 Package Policy

33.     Plaintiff Northern issued Cutrale the 1998-99 Package Policy.  A copy of the 1998-99 Package Policy is attached as Exhibit A.

34.     The 1998-99 Package Policy includes a section providing commercial general liability coverage (the "GL Coverage Section").

35.     Coverage A of the GL Coverage Section of the 1998-99 Package Policy applies to third-party "property damage" and provides in part:

> *COVERAGE A.     BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
> *1.     Insuring Agreement.*
>
> *a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.*

36.     Coverage A of the GL Coverage Section specifies that the insurance applies only to "bodily injury" or "property damage" caused by an "occurrence" that takes place "during the policy period."

37.     The GL Coverage Section defines "property damage" as follows:

> *"Property damage" means:*
> *a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
>
> *b.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

38.     The GL Coverage Section defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

39.     Coverage A of the GL Coverage Section includes an exclusion barring coverage for "property damage" to "Property You [the insured own] and to "Personal Property in the case, custody or control of the insured."

40.     Coverage A of the GL Coverage Section includes an exclusion for "property damage" to "your product arising out of it or any part of it."

41.     Coverage A of the GL Coverage Section includes an exclusion barring coverage for damage to "impaired property or property not physically injured."  That section, set forth in part below, provides that the insurance does not apply to:

> **m.     Damage to Impaired Property or Property Not Physically Injured**
>
> *"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*
>
> *(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*

(2)     *A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

*This exclusion does not apply to the loss of use of other property arising out of a sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

42.     The GL Coverage Section defines "impaired property" as follows:

*"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:*

*a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*

*b.     You have failed to fulfill the terms of a contract or agreement,*

*if such property can be restored to use by:*

*a.     The repair, replacement, adjustment or removal of "your product" or "your work"; or*

*b.     Your fulfilling the terms of the contract or agreement.*

43.     The GL Coverage Section requires that Cutrale provide notice to the insurer "as soon as practicable" of:  (1) an "'occurrence' or an 'offense' which may result in a claim"; or (2) a claim or "suit" brought against any insured.

44.     The GL Coverage Section requires that Cutrale "[c]ooperate with [the insurer]" in the investigation or settlement of the claim or defense against the "suit."

45.     As a condition to coverage under the GL Coverage Section, "[n]o insured will, except at its [the insured's] own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

46.     Coverage A of the GL Coverage Section includes an exclusion barring coverage for "property damage expected or intended from the standpoint of the insured."

47.     Coverage A of the GL Coverage Section includes an exclusion barring coverage for "property damage  for which the insured  is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

48.     Coverage A of the GL Coverage Section includes an exclusion barring coverage for property damage caused by pollutants.  That section, set forth in part below, provides that the insurance does not apply to:

> f.     Pollution
>
> (1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
> (a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured

49.     The GL Coverage Section defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste.  Waste includes materials to be recycled, reconditioned or reclaimed."

50.     The GL Coverage Section contains other provisions which may limit or bar coverage in particular circumstances.

## 2.  The Umbrella Policy

51.     Northern issued Cutrale an umbrella policy, numbered UBA 33905564, for the policy period from October 4, 1998 to October 4, 1999 ("Umbrella Policy").  A copy of this Umbrella Policy is attached as Exhibit B.

52.     The Umbrella Policy provides insurance coverage in excess of the "retained limit" which the insured becomes legally obligated to pay as damages for, among other things "'[b]odily injury' or 'property damage' occurring during the POLICY PERIOD stated on the DECLARATIONS PAGE and caused by an "occurrence."

53.    The Umbrella Policy provides coverage only "[w]hen 'underlying insurance' does not apply to an 'occurrence' or offense and coverage for the 'occurrence' or offense is provided by" the Umbrella Policy.

54.    Under the Umbrella Policy, the insurer may, at its option, "investigate any 'occurrence' or offense and settle any 'claim' . . . that may result."

55.    The Umbrella Policy includes specific exclusions barring coverage for, among other things, "impaired property," "pollution," and certain types of "property damage."

56.    The meaning in the Umbrella Policy of the terms "occurrence" "property damage," "impaired property," "pollution," "your work" and "your product" is substantially similar to the meaning of these same terms in the GL Coverage Section of the 1998-99 Package Policy.

57.    The Umbrella Policy contains other provisions which may limit or bar coverage in particular circumstances.

### 3.  The Property Coverage Section of the 1997-98 Package Policy

58.    Plaintiff Zurich issued the Cutrale 1997-98 Package Policy.  A copy of the 1997-98 Package Policy is attached as Exhibit C.

59.    The 1997-98 Package Policy includes a section providing commercial property coverage (the "Property Coverage Section").

60.    The Property Coverage Section of the 1997-98 Package Policy provides in part as follows:

> *We [the insurer] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.*

61.     The Property Coverage Section defines Covered Causes of Loss to mean "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is either "Excluded in Section B., Exclusions" or "Limited in Section C., Limitations."

62.     Section B of the Property Damage Section provides in part as follows:

> *2.      We will not pay for loss or damage caused by or resulting from any of the following:*
>
> *a.      Delay, loss of use or loss of market.*
>
> *c.      (1)      Wear and tear;*
>
> *(2)      Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.*
>
> *(6)      Mechanical breakdown, including rupture or bursting caused by centrifugal force.*

63.     Section C of the Property Damage Section provides in pertinent part as follows:

> *4.      We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes.*

64.     The Property Coverage Section specifies that the insurance applies only to "loss or damage" commencing "[d]uring the policy period shown in the Declarations."

65.     The Property Coverage Section contains a condition to coverage which provides as follows:

> ***Duties in the Event of Loss or Damage***
>
> *a.  You [the insured] must see that the following are done in the event of loss or damage to Covered Property:*
> *       *   *   **
>
> *(2)      Give us [the insurer] prompt notice of the loss or damage. Include a description of the property involved.*

66.     The Property Coverage Section contains an "other insurance" provision that limits the obligations of Zurich "if there is other insurance covering the same loss or damage."

67.     The Property Coverage Section contains other provisions which may limit or bar coverage in particular circumstances.

### 4.     **The Zurich BM Policy**

68.     Zurich issued to Cutrale a Boiler and Machinery insurance policy numbered BM83-42-803-01, effective during the period from October 4, 1997, to October 4, 1998 ("Zurich BM Policy"). This Zurich BM Policy is attached as Exhibit D.

69.     The Zurich BM Policy states in part as follows:   "We [the insurer] will pay for "direct damage to Covered Property caused by a Covered Cause of Loss."

70.     The Zurich BM Policy defines "Covered Property" to mean as follows:

*1.     Covered Property*

*Covered Property, as used in this Coverage Part, means any property that*

*a.     You [the insured] own; or*

*b.     is in your care custody or control and for which you are legally liable.  In addition to paying for loss to this property, we will defend you against any claim or "suit" alleging liability for damage to this property, subject to the Defense and the Supplementary Payments provisions.*

71.     The Zurich BM Policy defines "Covered Cause of Loss" to mean an "accident" to an "object" shown in the Declaration.

72.     The Zurich BM Policy defines "Accident" to mean as follows:

*1.     "Accident" means a sudden and accidental breakdown of the "object" or a part of the "object."  At the time the breakdown occurs, it must manifest itself by physical damage to the "object" that necessitates repair or replacement.*

)                                    )

*None of the following is an "accident":*

*a.      Depletion, deterioration, corrosion or erosion;*

*b.      Wear and tear;*

*c.      Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;*

*d.      Breakdown of any vacuum tube, gas tube or brush;*

*e.      Breakdown of any electronic computer or electronic data processing equipment;*

*f.      Breakdown of any structure or foundation supporting the "object" or any of its parts; or*

*g.      The functioning of any safety or protective device.*

73.    The Zurich BM Policy contains a coverage change endorsement that defines "object" ("Object Definition Number 9").  Object Definition Number 9 contains the following definition of "object":

*A.      "Object" means any:*

*1.      Boiler, fired pressure vessel, unfired vessel normally subject to vacuum or internal pressure other than weight of its contents, refrigerating and air conditioning systems, and any metal piping and its accessory equipment.*

                        *       *       *

*B.      "Object" does not mean any:*

*2.      Non-metallic vessel, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (ASME) code;*

74.    The Zurich BM Policy contains a condition to coverage which states as follows:

**1.      Loss Conditions**

**a.      Duties in the Event of Loss or Damage**

> (1)     You [the insured] must see that the following are done in the event of loss or damage:
>
> (a)     Give us [the insurer] a prompt notice of the loss or damage.  Include a description of the property involved.

75.     The Zurich BM Policy contains an "other insurance" provision that limits the obligations of Zurich "if there is other insurance covering the same loss or damage."

76.     The Zurich BM Policy includes an exclusion which provides as follows:

> B.     EXCLUSIONS
>
> We will not pay for:
>
> 1.     Any increase in loss caused by or resulting from the enforcement of any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operations, construction or installation.  As used here, increase in loss also includes expenses incurred beyond those for which we would have paid if no substance declared to be hazardous to health by a governmental agency had been involved in the "accident.

77.     The Zurich BM Policy includes other provisions which may limit or bar coverage in particular circumstances.

## CAUSES OF ACTION

### COUNT I

**(For A Declaration Under The GL Coverage Section Of The 1998-99 Package Policy)**

78.     Plaintiffs repeat and incorporate herein the allegations set forth in the previous paragraphs of this Complaint.

79.     There is no duty to defend Cutrale under the GL Coverage Section of the 1998-99 Package Policy because no suit has been filed against Cutrale related to the 1999 Incident.

80.     There is no coverage for Cutrale's potential liabilities related to the 1999 Incident under the GL Coverage Section of the 1998-99 Package Policy unless there was "property damage," as defined in the policy, during the policy period of that policy and which is not otherwise excluded.

81.     There is no coverage for Cutrale's potential liabilities related to the 1999 Incident under the GL Coverage Section of the 1998-99 Package Policy to the extent that such liabilities constitute damage to "'impaired property' or property not physically injured," involving a "defect, deficiency, inadequacy or dangerous condition" in Cutrale's product or its work.

82.     There is no coverage for Cutrale's potential third-party liabilities related to the 1999 Incident under the GL Coverage Section of the 1998-99 Package Policy to the extent that such liabilities are not covered under the terms, conditions, exclusions, exceptions, limitations, and limitations of liability contained therein, including but not limited to the terms and conditions described in this Complaint.

83.     Any coverage for Cutrale's potential liability related to the 1999 Incident may be barred or limited because of additional reasons that cannot now be articulated because of the generality of Cutrale's description of its claim or otherwise unknown to Plaintiffs at this time, so that Plaintiffs specifically reserve that right, including the right to raise additional defenses upon learning more information regarding the 1999 Incident or Cutrale's coverage claims related thereto.

## COUNT II

### (For A Declaration Under The Umbrella Policy)

84.     Plaintiffs repeat and incorporate herein the allegations set forth in the previous paragraphs of this Complaint.

85.     Any coverage for Cutrale's potential liability related to the 1999 Incident is barred or limited to the extent that such liabilities are not covered under the Umbrella Policy, including but not limited to, all terms, conditions, exclusions, exceptions, limitations, and limitations of liability described in this Complaint.

86.     Any coverage for Cutrale's potential liability related to the 1999 Incident is barred under the Umbrella Policy to the extent that the underlying 1998-99 Package Policy bars coverage under terms, conditions or exclusions which are also contained or incorporated in the Umbrella Policy.

87.     Any coverage for Cutrale's potential liability related to the 1999 Incident is barred or limited under the Umbrella Policy because of additional reasons that cannot now be articulated because of the generality of Cutrale's description of its claim or otherwise unknown to Plaintiffs at this time, so that Plaintiffs specifically reserve that right, including the right to raise additional defenses upon learning more information regarding the 1999 Incident and Cutrale's coverage claims related thereto.

## COUNT III

### (For A Declaration Under The Property Coverage Section Of The 1997-98 Package Policy)

88.     Plaintiffs repeat and incorporate herein the allegations set forth in the previous paragraphs of this Complaint.

17

89.    Any payment for loss or damage that Cutrale may have suffered related to the 1998 Incident is barred under the Property Coverage Section of the 1997-98 Package Policy because Cutrale failed to give its insurer "prompt notice of the loss or damage, including a description of the property involved."

90.    Any loss or damage that Cutrale may have suffered related to the 1998 Incident is barred under the Property Coverage Section of the 1997-98 Package Policy because such loss or damage is excluded from coverage as "damage caused by or resulting from" "delay, loss of use or loss of market" or "wear and tear" or "[r]ust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself," "mechanical breakdown, including rupture or bursting caused by centrifugal force" or the leakage of "other liquids" "caused by or resulting from freezing."

91.    There is no coverage for any loss or damage Cutrale may have suffered related to the 1998 Incident is under the Property Coverage Section of the 1997-98 Package Policy to the extent that such loss or damage is not covered under the terms, conditions, exclusions, exceptions, limitations, and limitations of liability contained therein, including but not limited to the terms and conditions described in this Complaint.

92.    Any coverage under the Property Coverage Section of the 1997-98 Package Policy for loss or damage that Cutrale suffered related to the 1998 Incident may be barred or limited because of additional reasons that cannot now be articulated because of the generality of Cutrale's description of its loss or are otherwise unknown to Plaintiffs at this time, so that Plaintiffs specifically reserve all of their rights, including to the right to raise additional defenses upon learning more information regarding the 1998 Incident and Cutrale's coverage claims related thereto.

)                                              )

## COUNT IV

### (For A Declaration Under The Zurich BM Policy)

93.     Plaintiffs repeat and incorporate herein the allegations set forth in the preceding paragraphs of this Complaint.

94.     Any loss or damage that Cutrale may have suffered related to the 1998 Incident is barred under the Zurich BM Policy because Cutrale failed to give Zurich "prompt notice of the loss or damage," including a "description of the property involved."

95.     Any loss or damage that Cutrale may have suffered related to the 1998 Incident is barred or limited under the Zurich BM Policy to the extent that such loss or damage was an "increase in loss caused by or resulting from the enforcement of any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alternation, use, operation, construction or installation."

96.     Any loss or damage that Cutrale may have suffered related to the 1998 Incident is barred under the Zurich BM Policy to the extent that the loss was not a "Covered Cause of Loss."

97.     Any loss or damage that Cutrale may have suffered related to the 1998 Incident is barred under the Zurich BM Policy to the extent that such loss or damage is excluded as "any other indirect result" of an "accident" to an "object."

98.     Any loss or damage that Cutrale may have suffered related to the 1998 Incident is barred under the Zurich BM Policy to the extent that such damage is not covered under the provisions of the Zurich BM Policy, including but not limited to all terms, conditions, exclusions, exceptions, limitations, and limitations of liability described in this Complaint.

99.     Any loss or damage that Cutrale may have suffered related to the Incident is barred under the Zurich BM Policy because of additional reasons that cannot now be articulated because of the generality of Cutrale's description of its claim or that are otherwise unknown to Zurich at this time, so that Zurich specifically reserves its right, including the right to raise additional defenses upon learning more information regarding the 1998 Incident and Cutrale's claims related thereto.

### VII.     PRAYER FOR RELIEF

100.     WHEREFORE, Zurich and Northern respectfully request that this Court enter a judgment that:

(a)     Declares the rights and obligations of Northern and Cutrale under the 1998-99 Package Policy regarding general liability coverage related to the 1999 Incident;

(b)     Declares the rights and obligations of Northern and Cutrale under the Umbrella Policy regarding general liability coverage related to the 1999 Incident;

(c)     Declares the rights and obligations of Zurich and Cutrale under the 1997-98 Package Policy regarding property damage coverage related to the 1998 Incident;

(d)     Declares the rights and obligations of Zurich and Cutrale under the Zurich BM Policy regarding the 1998 Incident;

(e)     Awards Zurich and Northern such other and further relief as this Court deems just and proper; and

(f)     Awards Zurich and Northern the costs incurred as a result of this action.

)                                                    )

Respectfully submitted,

By: _David B. Shelton_

David B. Shelton
Florida Bar No. 0710539
Rumberger, Kirk & Caldwell, P.A.
P. O. Box 1873
Orlando, Florida  32802-1873
Telephone: (407) 839-4511
Facsimile: (407) 841-2133

Of Counsel:
Thomas W. Brunner
Keith S. Watson
WILEY, REIN & FIELDING
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000

Attorneys for Plaintiffs Zurich American Insurance Company and
Northern Insurance Company of New York

Dated:  May  _4_ , 2000

21